[No. 48199-1-I. Division One. January 14, 2002.]

LIEN TRINH, *Appellant*, v. ALLSTATE INSURANCE COMPANY, *Respondent*.

*Betsylew R. Miale-Gix* (of *Adler Giersch, P.S.*), for appellant.

*M. Colleen Barrett* (of *Barrett & Worden, P.S.*), for respondent.

A<small>GID</small>, C.J. — Lien Trinh appeals the trial court's order granting Allstate Insurance Company's motion for summary judgment. Trinh watched her best friend die when he was hit by a drunk driver while helping Trinh change a flat tire on the side of the road. As a result, Trinh suffered from posttraumatic stress disorder (PTSD) and sought coverage under the uninsured motorist (UIM) provision of her automobile insurance policy. Allstate refused to cover Trinh's damages, contending that PTSD is not a "bodily injury," and thus falls outside her UIM coverage. The trial court agreed with Allstate, holding that because the UIM policy "provides no coverage for emotional distress that is not a result of physical injury," Trinh's PTSD claim is "not within the coverage afforded her under the insurance policy." We conclude that PTSD accompanied by physical manifestations falls within the definition of "bodily injury" under Trinh's UIM policy. Therefore, we reverse the summary judgment order and remand for further proceedings consistent with this opinion.

## FACTS

The facts of this case are largely undisputed. In September 1996, Lien Trinh was driving north on Interstate 5 in Seattle when she got a flat tire. She pulled her car off the traveled portion of the highway at the Mercer Street exit and walked down the ramp to get help. Trinh found a

telephone and called her best friend Norman (Pete) Drosdal. Drosdal and his friend, Robert Lee, picked up Trinh and returned to her car to change the tire. By the time they arrived back at Trinh's car, Washington State Trooper Lex Lindquist had come to the scene and parked his patrol car behind Trinh's vehicle. As Drosdal and Lee were trying to get the spare tire out of the trunk, a car driven by Vernon McHenry struck and killed Drosdal and injured Lee. Although Trinh was standing next to Drosdal when he was hit, the car did not hit her, and she did not seek medical treatment that night.

In the weeks following the accident, Trinh experienced frequent headaches and constantly felt sick to her stomach. She was unable to eat and vomited at least once a day. Over one year, she lost about 10 or 15 pounds. She also suffered hair loss, fragile fingernails, and skin breakouts. Her physical symptoms were accompanied by feelings of depression and anxiety, nightmares, insomnia, and chronic crying. She sought help from Dr. Hanan Berman, a clinical psychologist, about two weeks after the accident. Dr. Berman diagnosed Trinh with chronic PTSD "that was entirely and solely related to the September 26, 1996 accident on a far more probable than not basis."

The driver of the car that killed Drosdal was uninsured. Trinh had an automobile insurance policy with Allstate, which included both personal injury protection (PIP) and uninsured/underinsured motorist coverage. Trinh filed a claim with Allstate under the PIP provision of her policy, which covered damages "when bodily injury, sickness, disease, or death is caused by an accident arising from the ownership, maintenance or use of a motor vehicle as a motor vehicle."[1] Allstate covered the PIP claim, paying for Trinh's treatment with Dr. Berman through May 1999 and for $256.78 in lost income, but it denied coverage for Trinh's PTSD damages under the UIM provision of the policy.

---

[1] (Emphasis omitted.)

Trinh sued Allstate, seeking a declaration that she was entitled to benefits for damages related to her PTSD under the UIM provision of her Allstate policy. The trial court granted summary judgment for Allstate and this appeal followed.

## ANALYSIS

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.[2] On a motion for summary judgment, the trial court views all evidence and draws all reasonable inferences in the light most favorable to the nonmoving party.[3] On appeal we review summary judgment orders de novo.[4]

The issue in this case is whether the term "bodily injury" in a UIM provision of an insurance policy includes emotional injuries accompanied by physical manifestations. In Washington, insurance providers are required to provide UIM coverage

> for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of underinsured motor vehicles, hit-and-run motor vehicles, and phantom vehicles because of bodily injury, death, or property damage, resulting therefrom . . . .[5]

The Allstate policy involved in this case provided the required UIM coverage:

> We will pay damages for bodily injury or property damage which an insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle. Injury must be caused by accident and arise out of the ownership, maintenance or use of an underinsured motor vehicle. Bodily injury means bodily injury, sickness, disease or death.

[2] CR 56(c); *Kruse v. Hemp*, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993).

[3] *Scott v. Pac. W. Mt. Resort*, 119 Wn.2d 484, 487, 834 P.2d 6 (1992).

[4] *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 63-64, 1 P.3d 1167 (2000).

[5] RCW 48.22.030(2).

Trinh argues that her physically-manifested PTSD is a "bodily injury" and therefore her damages are compensable under the UIM provision of her insurance policy. We agree.

 "Interpretation of an insurance contract is a question of law."[6] We construe Trinh's insurance policy as a whole and interpret it "as an average insurance purchaser would understand" it.[7] Ambiguous terms are resolved in favor of the insured.[8] A term is ambiguous "if the language on its face is fairly susceptible to two different but reasonable interpretations."[9]

Washington follows the majority view that " 'in the context of purely emotional injuries, without physical manifestations, the phrase "bodily injury" is not ambiguous. Its ordinary meaning connotes a physical problem.' "[10] In *Daley v. Allstate Insurance Co.*,[11] the Washington Supreme Court interpreted a UIM provision identical to the one in this case and held that "the term 'bodily injury' does not encompass recovery for purely emotional injuries."[12] The plaintiff in *Daley*, a Benton County sheriff's deputy, was assisting a stranded motorcyclist when a car struck him and another officer at the scene. The other officer later died from his injuries, but Daley suffered only "relatively minor"[13] bruises, swelling, and lacerations on his arm and leg.[14] Over a year after the accident, Daley was diagnosed with depression and late-onset PTSD.[15] Daley's emotional distress was attributable in part to "the guilt and emotional

---

[6] *Daley v. Allstate Ins. Co.*, 135 Wn.2d 777, 783, 958 P.2d 990 (1998).

[7] *Id.* at 784; *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha*, 126 Wn.2d 50, 65, 882 P.2d 703, 891 P.2d 718 (1994).

[8] *Daley*, 135 Wn.2d at 784.

[9] *Id.* (emphasis omitted) (citations omitted).

[10] *Id.* at 785 (quoting *SL Indus., Inc. v. Am. Motorists Ins. Co.*, 128 N.J. 188, 205, 607 A.2d 1266 (1992)).

[11] 135 Wn.2d 777, 958 P.2d 990 (1998).

[12] *Id.* at 786.

[13] *Id.* at 783.

[14] *See id.* at 780.

[15] *See id.*

trauma related to witnessing [the other officer's] fatal injuries in addition to the emotional trauma of the accident itself."[16] The court concluded that Daley's "purely emotional distress," which was unaccompanied by physical symptoms, did not qualify as a "bodily injury" under his UIM policy.[17]

But the *Daley* court expressly declined to decide whether emotional distress is covered by a UIM policy if it is accompanied by physical manifestations.[18] This case presents the precise question that *Daley* left open. Unlike the plaintiff in *Daley*, Trinh alleges that her chronic PTSD has resulted in physical symptoms including headaches, nausea, sleeplessness, hair loss, weight loss, and fragile fingernails. No Washington case has decided whether emotional distress with physical manifestations constitutes "bodily injury" in the context of an insurance contract.

While other jurisdictions are divided on this issue, many courts have held that allegations of physically-manifested emotional distress fall within "bodily injury" coverage in the insurance context.[19] A law review article observes that "[e]ven courts that have concluded that nonphysical harm

---

[16] *Id.* at 783.

[17] *Id.* at 787.

[18] *See id.* at 783 n.3 ("We note that this is not a case where the parties have argued that the emotional distress has manifested physical symptoms, arguably, becoming a 'bodily injury' under the terms of the policy. Daley does not allege that his posttraumatic distress disorder and related depression resulted in physical symptoms."). We recognize that the *Daley* decision could be construed to require that an emotional injury arise out of a physical injury in order to constitute a "bodily injury" under an insurance policy. However, such a narrow reading of *Daley* would be inconsistent with the idea expressed in this footnote.

[19] *See, e.g., Twin City Fire Ins. Co. v. Colonial Life & Accident Ins. Co.*, 124 F. Supp. 2d 1243, 1247 (M.D. Ala. 2000) (Under South Carolina law, emotional trauma can constitute "bodily injury" under an insurance policy unless the complaint contains no allegations of physical damages.); *Am. Motorists Ins. Co. v. S. Sec. Life Ins. Co.*, 80 F. Supp. 2d 1280, 1283 (M.D. Ala. 2000) (Under Florida law, allegation of physically manifested mental anguish met insurance policy's definition of bodily injury.); *Gen. Star Indem. Co. v. Sch. Excess Liab. Fund*, 888 F. Supp. 1022, 1027 (N.D. Cal. 1995) (Under California law, "[p]hysical injury resulting from emotional distress . . . constitutes 'bodily injury.'"); *W. Cas. & Sur. Co. v. Waisanen*, 653 F. Supp. 825, 832 (D.S.D. 1987) (Emotional distress accompanied by allegation of high blood pressure was "an allegation of physical harm."); *Kufalk v. Hart*, 636 F. Supp. 309, 311-12 (N.D. Ill. 1986) (Emotional

does not constitute bodily injury have held otherwise when the emotional distress produces discernible physical symptoms."[20] And, many jurisdictions that deny "bodily injury" coverage for purely emotional injuries have indicated that there would be coverage if an emotional injury were accompanied by physical manifestations.[21]

---

distress resulting in high blood pressure, headaches, stomach pains, and diarrhea constituted "bodily injury" under general liability insurance policy.); *Employers Cas. Ins. Co. v. Foust*, 29 Cal. App. 3d 382, 386, 105 Cal. Rptr. 505 (1972) (Emotional distress suffered by parents after watching an accident involving their child constituted "bodily injury."); *State Farm Fire & Cas. Co. v. Nikitow*, 924 P.2d 1084, 1089 (Colo. Ct. App. 1995) (Although the term "bodily injury" in insurance contract did not encompass purely emotional harm, coverage was available if injury was accompanied by physical manifestations.); *McGuire v. Am. States Ins. Co.*, 491 So. 2d 606, 608 (Fla. Dist. Ct. App. 1986) (finding a genuine issue of fact about whether mental distress accompanied by headaches and muscle spasms, requiring treatment and medication, could be construed as "bodily injury" under insurance policy); *Crabtree v. State Farm Ins. Co.*, 632 So. 2d 736, 744 (La. 1994) ("Bodily injury" includes mental anguish that is "severe and debilitating."); *Holcomb v. Kincaid*, 406 So. 2d 646, 649 (La. Ct. App. 1981) (Emotional distress resulting in rash, hair loss, weight loss, and symptoms of stroke fell within homeowners insurance policy's definition of "bodily injury."); *Garvis v. Employers Mut. Cas. Co.*, 497 N.W.2d 254, 257 (Minn. 1993) ("[E]motional distress with appreciable physical manifestations can qualify as a 'bodily injury' within the meaning of the insurance policy."); *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 607 A.2d 1255 (1992) (Emotional distress resulting in headaches, stomach pains, nausea, and body pains constituted "bodily injury" under homeowner's insurance policy.). *But see Moore v. Cont'l Cas. Co.*, 252 Conn. 405, 746 A.2d 1252, 1257 (2000) (Physically manifested emotional distress was not "bodily injury" under insurance policy when the distress resulted from economic loss that was outside the scope of the policy.); *Dahlke v. State Farm Mut. Auto. Ins. Co.*, 451 N.W.2d 813, 815 (Iowa 1990) (In loss of consortium claim, "bodily injury" did not include physical manifestations of emotional distress.); *Zerr v. Erie Ins. Exch.*, 446 Pa. Super. 451, 667 A.2d 237, 240 (1995), *appeal denied*, 674 A.2d 1075 (1996) (The term "bodily injury" in an insurance policy did not include mental illnesses manifested by physical symptoms.).

[20] Keri Farrell-Kolb, Note: *General Liability Coverage for Claims of Emotional Distress—An Insurance Nightmare*, 45 DRAKE L. REV. 981, 993-94 (1997).

[21] *See Voorhees*, 607 A.2d at 1261 (citing *Aim Ins. Co. v. Culcasi*, 229 Cal. App. 3d 209, 280 Cal. Rptr. 766, 773-74 (1991); *Albin v. State Farm Mut. Auto. Ins. Co.*, 498 So. 2d 171, 174 (La. Ct. App.), *writ denied*, 498 So. 2d 1088 (La. 1986); *Greenman v. Mich. Mut. Ins. Co.*, 173 Mich. App. 88, 433 N.W.2d 346, 349 (1988); *Farm Bureau Mut. Ins. Co. v. Hoag*, 136 Mich. App. 326, 356 N.W.2d 630, 633 (1984); *Artcraft v. Lumberman's Mut. Cas. Co.*, 126 N.H. 844, 497 A.2d 1195, 1196 (1985)); *see also State Farm Fire & Cas. Co. v. Basham*, 206 Mich. App. 240, 520 N.W.2d 713, 715 (1994) ("At a minimum, there must be allegations of physical manifestations supported by sufficient documented evidence in order for [bodily injury] insurance coverage to be triggered."); *Garvis*, 497 N.W.2d at 257 ("emotional distress with appreciable physical manifestations can qualify as a 'bodily injury' within the meaning of the insurance policy"); *Trinity Universal Ins. Co. v.*

Allstate relies on *Dahlke v. State Farm Mutual Auto Insurance Co.*[22] There, the Iowa Supreme Court, construing a UIM policy, stated that "the term 'bodily injury' is clear on its face and does not include the physical manifestations" of emotional distress.[23] In that case, the parent insureds filed claims against State Farm for the emotional distress they suffered when their son was struck and killed by an uninsured motorist.[24] The parents alleged their emotional distress, which included sleep disturbance, headaches, stomach problems, and low energy, constituted "bodily injury" under their uninsured motorist policy. The Iowa court disagreed, stating that "the term 'bodily injury' is clear on its face and does not include the physical manifestations of the parents' loss here."[25]

However, in *Pekin Insurance Co. v. Hugh*,[26] the Iowa Supreme Court distinguished *Dahlke* as a loss of consortium case and held that there was a question of fact about whether family members who suffered emotional distress after *witnessing* a fatal automobile accident sustained "bodily injuries" under their UIM policy. Without expressly overruling *Dahlke*, the court stated that

[a]ny attempt to distinguish between "physical" and "psychological" injuries just clouds the issue. This is because the medical community now knows that "every emotional disturbance has a physical aspect and every physical disturbance has an emotional aspect." . . . Whether Hope and Aubrey have suffered compensable injuries should not therefore turn on any

---

*Cowan*, 40 Tex. Sup. Ct. J. 583, 945 S.W.2d 819, 826 (1997) ("because Cowan did not plead any physical manifestations of her alleged mental injuries, she did not plead a 'bodily injury' such that Trinity's duty to defend was triggered").

[22] 451 N.W.2d 813 (Iowa 1990).

[23] *Id.* at 815.

[24] The parents in *Dahlke* did not witness the fatal accident.

[25] *Dahlke*, 451 N.W.2d at 815.

[26] 501 N.W.2d 508 (Iowa 1993).

artificial and arbitrary classification such as "physical" or "psychological."[27]

Like the family members in *Pekin*, and unlike the parents in *Dahlke*, Trinh actually witnessed the fatal accident that caused her PTSD. Therefore, Allstate's reliance on *Dahlke* is not persuasive, particularly because *Pekin* apparently limits the *Dahlke* holding to its facts.[28]

Although it may initially seem unrelated, we have found it helpful to refer to recent federal court decisions discussing whether PTSD is a "bodily injury" under the Warsaw Convention. The Warsaw Convention requires plaintiffs suing air carriers for injuries occurring on international flights to show they suffered "bodily injury" during an accident on board an aircraft.[29] In *Eastern Airlines v. Floyd*,[30] the United States Supreme Court held that purely mental or psychic injuries did not satisfy the Convention's "bodily injury" requirement, but declined to decide "whether passengers can recover for mental injuries that are accompanied by physical injuries."[31] District courts interpreting the Convention in light of *Floyd* have consistently concluded that "an accident victim's PTSD can itself constitute a physical injury because it results in discernible physical changes to the structure of the brain."[32]

---

[27] *Id.* at 512 (quoting Comment, *Negligently Inflicted Mental Distress: The Case For An Independent Tort*, 59 GEO. L.J. 1237, 1241 n.24 (1971)).

[28] *See Pekin Ins. Co.*, 501 N.W.2d at 511 ("Unlike the loss of consortium claim, an injury the bystander suffers is not one that results from an injury to another person. Rather the injury is *directly to the bystander* as a result of the bystander *seeing* the accident and *reasonably believing* that the direct victim of the accident would be seriously injured or killed.").

[29] *See Ligeti v. British Airways*, No. 00-CIV. 2936, 2001 U.S. Dist. LEXIS 15996, at *10, 2001 WL 1356238, at *3 (S.D.N.Y. 2001).

[30] 499 U.S. 530, 111 S. Ct. 1489, 113 L. Ed. 2d 569 (1991).

[31] *Id.* at 552.

[32] *Ligeti*, 2001 U.S. Dist. LEXIS 15996, at *14, 2001 WL 1356238, at *5 (citing *Turturro v. Cont'l Airlines*, 128 F. Supp. 2d 170, 178 (S.D.N.Y. 2001) ("New technology has allowed doctors to perceive that extreme stress, such as a near-death experience or being taken hostage, can actually change brain cell structure and cause a specific area of the brain to atrophy."); *see also Turturro*, 128 F. Supp. 2d at 179 ("According to *Floyd*, bodily injury encompasses 'a change in the structure of an organ,' . . . and the brain's physical architecture can transform

■ In light of the persuasive precedents discussed above, we conclude that the term "bodily injury" includes emotional injuries that are accompanied by physical manifestations. We find it significant that Allstate's policy in this case defines "bodily injury" to mean "sickness" or "disease." Physically-manifested PTSD clearly and unambiguously falls within these broad terms. Therefore, we apply the *Daley* court's conclusion that the term "bodily injury" in Allstate's UIM policy is not ambiguous in this context.[33] An insurance purchaser would reasonably interpret the term "bodily injury" to include physically-manifested emotional distress, and we hold that where there are physical manifestations of PTSD, it qualifies as a "bodily injury" under a UIM policy like Trinh's.

In this case, Trinh has alleged that her PTSD resulted in a number of physical symptoms including weight loss, hair loss, fragile fingernails, loss of sleep, headaches, stomach pains, and muscle aches. The physical manifestations of her emotional injury are documented in Trinh's deposition, Dr. Berman's narrative report and declaration, and the declarations of Rick Lough, Aaron Losik, Peter Shacklin, and Samantha Losik. Noting that "PTSD leads to acute and chronic changes in the central nervous system," Dr. Berman concluded that Trinh "has experienced physiologic/ neurobiologic changes or injuries as a direct result of her exposure to the motor vehicle accident of September 1996." We conclude that Trinh has raised a genuine issue of material fact about whether she is in fact a victim of chronic PTSD with physical manifestations. Accordingly, we reverse the trial court's summary judgment order.

---

during PTSD. Although the American Psychiatric Association still classifies PTSD as a mental disorder, that classification is not dispositive, and we acknowledge that under some circumstances a diagnosis of chronic PTSD may fall within the Convention's definition of 'bodily injury.' ") (quoting *Floyd*, 499 U.S. at 541); *In re Air Crash at Little Rock, Ark., on June 1, 1999*, 118 F. Supp. 2d 916, 924-25 (E.D. Ark. 2000) (concluding that "PTSD, itself, constitutes a physical manifestation of injury" because "PTSD is a biological as well as an emotional and psychological illness").

[33] *Daley*, 135 Wn.2d at 785.

Reversed and remanded for further proceedings consistent with this opinion.

GROSSE and COX, JJ., concur.

Review denied at 147 Wn.2d 1003 (2002).